UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ORLANDO LOVE,

                Plaintiff,

v.

SHANIEKA DEVONNE MOSLEY
and DAVID SHARP,

                Defendants.

_____/

Case No. 1:14-cv-281

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner for incidents which occurred while he was on parole.  After initial screening of the complaint, plaintiff filed an amended complaint which named four defendants, Shanieka Devonne Mosley and David Sharp, the State of Michigan and the Michigan Department of Corrections (MDOC).  *See* Amend. Compl. (docket no. 8).  This matter is now before the court on defendant David Sharp's combined motion to dismiss and for summary judgment (docket no. 12).   The Court will consider three motions filed by plaintiff in opposition to defendant Sharp's dispositive motion: plaintiff's motion to stay (docket no. 23) (which also served as the substance of his response to the dispositive motion);  plaintiff's proposed second amended complaint (docketed as a motion) (docket no. 27); and plaintiff's motion to file a third amended complaint (docket no. 40).

### I.      Plaintiff's claims alleged in his amended complaint

Plaintiff was paroled on April 10, 2012 under the supervision of the MDOC and the State of Michigan.  Amend. Compl. at ¶¶ 11-12 (docket no. 8).  While plaintiff was on parole,  he engaged in an illegal sexual relationship with Mosley.  *Id.*  In July, 2012, with the help and

encouragement of Mosley, plaintiff changed his supervision address from 425 Woodlawn, SE, Grand Rapids, Michigan to 722 Dickerson, SE, Grand Rapids, Michigan. *Id.* at ¶ 13. On July 14, 2012, plaintiff "called [a] medical emergency for Defendant Mosley who was transferred to a medical facility." *Id.* at ¶ 14. During that "medical emergency," plaintiff gave law enforcement officials his address at 722 Dickerson. *Id.* at ¶ 15.

Plaintiff alleged that a number of incidents occurred on or about July 15, 2014. First, Mosley advised the MDOC that she was assaulted by plaintiff, that she did not live with plaintiff, and that she was not in a romantic relationship with plaintiff. *Id.* at ¶¶ 16-18. Second, the MDOC issued a warrant to detain plaintiff. *Id.* at ¶ 19. Third, defendant Sharp, whom plaintiff identified as "an employee of the Michigan Department of Corrections" allegedly "beat and tazed Plaintiff Love, without cause." *Id.* at ¶ 20. Fourth, Mosley "was present" during the alleged assault. *Id.* at ¶ 21.

Plaintiff alleged that he was charged with parole violations of assault and threatening behavior based upon Mosley's "false allegations" and "was placed in the Tuscola 'Domestic Violence Program.'" *Id.* at ¶¶ 24-25. In addition, plaintiff alleged that due to Mosley's false allegations and Sharp's assault he received physical injuries that required medical attention and "was illegally arrested and detained at the Grand Rapids Police Department." *Id.* at ¶¶ 22-23.

Some time later, plaintiff was interviewed by Detective/Sergeant Denise Bentley of the Michigan State Police. *Id.* at ¶ 26. Plaintiff was given a lie detector test "which [he] passes as giving truthful assertions of his relationship with Defendant Mosley." *Id.* at ¶ 27. Plaintiff was re-paroled on October 20, 2012 after his release from the Tuscola "Domestic Violence Program." *Id.* at ¶ 28. With respect to defendant Mosley, plaintiff alleged that "Mosley pleaded guilty to Criminal

Sexual Conduct, 2nd Degree, and received six (6) months in the Kent County Jail, three (3) months tether, twenty-four (24) months probation, and was required to register with the State of Michigan as a Sex Offender." *Id.* at ¶ 29. Finally, on or about February 11, 2013, "in retaliation for Plaintiff Love's criminal sexual conduct complaint," defendant Sharp "arrested Plaintiff Love at an address that the Michigan Department of Corrections had reason to know was not Plaintiff Love's current address." *Id.* at ¶ 30.

Plaintiff seeks relief against Mosley pursuant to 42 U.S.C. § 1983 for violating his Eighth Amendment rights by "sexually victimizing" plaintiff and "by conspiring with Defendant Sharp in the use of excessive force against Plaintiff Love and unlawfully arresting him." *Id.* at ¶¶ 31, 33 and 35. Plaintiff also seeks relief against Sharp pursuant to 42 U.S.C. § 1983 for violating his Eighth Amendment rights by "using unlawful excessive force against him" and "conspiring with Defendant Mosley to cover up her illegal acts." *Id.* at ¶¶ 32, 34 and 36. Plaintiff also alleged that Mosley and Sharp were employees of the MDOC and the State of Michigan and that these two entities are liable for their illegal and tortious acts. *Id.* at ¶¶ 37-46. While plaintiff claims that Mosley and Sharp violated state law, he does not allege any particular tort or statutory violation. *Id.* at ¶¶ 45-46. Plaintiff seeks in excess of $20,000,000.00 from the four defendants. *Id.* at ¶¶ 47-54.

Defendant Sharp has filed a combined motion seeking dismissal and summary judgment. *See* Motion (docket no. 12). Defendant Mosley has filed an answer and affirmative defenses which are directed to the original complaint. *See* Answer and Affirmative defenses (docket nos. 38 and 39). Finally, neither defendants MDOC or the State of Michigan have been served with a copy of the amended complaint.

3

## II.        Defendants MDOC and State of Michigan

Plaintiff has not yet served defendants MDOC and State of Michigan.  However, the amended complaint should not be served on either defendant because plaintiff has failed to state a claim against these two governmental entities.  The Court can *sua sponte* dismiss a plaintiff's *in forma pauperis* action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss the case at any time if the court determines that  .  .  .  (B) the action or appeal  .  .  .  (ii) fails to state a claim on which relief may be granted[.]"  A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).  The *Iqbal* plausibility standard applies when the Court considers dismissing a claim under § 1915(e)(2)(B)(ii).  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir.2010).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  In addition, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*,

528 F.3d 426, 430 (6th Cir. 2008).  Finally, it is well established that *pro se* complaints, like the one filed in this action, are held to "less stringent standards than formal pleadings drafted by lawyers." *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the duty to be "less stringent" with *pro se* complaints does not require this Court to conjure up unpled allegations.  *McDonald v. Hall*, 610 F.2d 16, 19  (lst Cir. l979).

Plaintiff may not maintain a § 1983 action against the MDOC or the State of Michigan.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341(1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986).  The Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 Fed. Appx. 646, 653-54 (6th Cir.2010) ("Because sovereign immunity extends to state instrumentalities, and the MDOC is an arm of the State of Michigan, the MDOC is entitled to sovereign immunity on the [plaintiff's] § 1983 claim") (internal citation and quotation marks omitted); *Sims v. Michigan Department of Corrections*, 23 Fed. Appx. 214, 215 (6th Cir. 2001) ("Because the MDOC is a state agency and the state of Michigan has not consented to civil rights suits in federal courts, the MDOC is entitled to Eleventh Amendment immunity").  In addition, the State of Michigan (on its own or acting through the MDOC) is not a "person" who may be sued

5

under § 1983 for money damages. *See Lapides v. Board of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Department of State Police*, 491 U.S. 58 (1989)). Accordingly, plaintiff's claims against defendants MDOC and the State of Michigan should be dismissed pursuant to § 1915(e)(2)(B)(ii).

### III.   Defendant Sharp's motion to dismiss and for summary judgment

#### A.   Legal standard

Defendant Sharp has filed a combined motion to dismiss and for summary judgment. Because Sharp has included evidence outside of the pleadings, the Court will treat this combined motion as one for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for

6

> summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.    Plaintiff § 1983 action against defendant Sharp

Plaintiff seeks relief against defendant Sharp pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). While plaintiff has alleged that defendant Sharp used excessive force in violation of the Eighth Amendment, his claim should have been brought under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that all claims involving law enforcement officers and their use of excessive force in effectuating an arrest should be analyzed under the Fourth Amendment). Assuming that plaintiff could amend his amended complaint to properly cite the Fourth Amendment, his claim still fails because defendant Sharp was not acting under color of state law.

7

The record reflects that the United States Marshals Service (USMS) appointed Sharp as a Special United States Deputy Marshal ("Special Deputy") for the period of March 24, 2011 through November 30, 2012.  *See* Special Deputation Appointment and Oath of Office (docket no. 13-4); Sharp Decl. at ¶ 2 (docket no. 13-2).  Under this appointment, Sharp was authorized "[t]o seek and execute arrest and search warrants supporting a federal task force."  Appointment and Oath at p. ID# 88. When the alleged incident occurred on July 15, 2012, Sharp, along with two other Special Deputies traveled to Grand Rapids to locate plaintiff and execute an arrest warrant.  Sharp Decl. at ¶¶ 3-5; MDOC Parole Violation Warrant (dated July 14, 2015) (docket no. 13-1 at p. ID# 79); MDOC Absconder Recovery Unit [ARU] Critical Incident Notification (docket no. 13-3 at p. ID# 86).

In a "Certification deeming defendant David Sharp to be acting in the scope of his federal employment", the United States Attorney for the Western District of Michigan certified that defendant Sharp "was acting within the scope of his federal detail appointment to the USMS Grand Rapids Fugitive Task Force."  Certification of United States Attorney Patrick Miles at ¶¶ 3 and 5 (docket no. 13-5).  Such task forces to arrest fugitives are authorized by 28 U.S.C. § 566(e)(1)(B), which provides that "[t]he United States Marshals Service is authorized to . . . (B) investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General[.]"  The United States Attorney's certification was executed  pursuant to 28 U.S.C. § 2679(d)(1), which provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States

district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." [1]

Federal agencies and their agents act under color of federal, not state law, and are not subject to suit under 42 U.S.C. § 1983.  *See Leon v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987) (officials at a Federal Reserve Bank act under color of federal law); *Corner v. Greef*, 99 Fed. Appx. 577, 580 (6th Cir. 2004) (officials at a federal agency acted under color of federal law); *Snyder v. United States*, 990 F.Supp.2d 818, 837 (S.D. Ohio 2014) (a federal actor cannot be sued under § 1983).  Here, although Sharp was an MDOC employee, he was appointed as a Special Deputy with a federal agency pursuant to federal statutes.

> The Intergovernmental Personnel Act of 1970, as amended, authorizes the assignment of employees from state or local governments to federal agencies.  5 U.S.C. §§ 3371-76 (2007).  This statute sets forth procedures by which local law enforcement officers may be deputized as federal agents "for work of mutual concern to . . . [the federal] agency and the State or local government."  *Id.* § 3372(a)(2).  A cross-deputized employee may either "be appointed in the Federal agency," or may "be deemed on detail to the Federal agency."  *Id.* § 3374(a)(1)-(2) (emphasis added).  The assignment requires a written agreement between the employee, the federal agency, and the local government. 5 C.F.R. § 334.106.

*Pettiford v. City of Greensboro*, 556 F.Supp.2d 512, 534 (M.D. N.C. 2008) (footnotes omitted).

Most courts, including the Sixth Circuit, categorize Special Deputies as federal actors:

> Cross-deputized local law enforcement officers enjoy certain immunities and protections of federal officers acting under color of federal law.  Of particular

---

[1] The regulations require the employing federal agency to "submit a report to the United States Attorney for the district embracing the place where the civil action or proceeding is brought fully addressing whether the employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose," 28 C.F.R. § 15.3(a), and authorize "[t]he United States Attorney for the district where the civil action or proceeding is brought . . . to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose," 28 C.F.R. § 15.4(a).

relevance to this action, section 3374(c)(2) provides that a local government employee "is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal tort liability statute." 5 U.S.C. § 3374(c)(2). As federal agents, cross-deputized local law enforcement officers avoid prosecution under section 1983 because they are not acting under color of state law. *Harris v. Gadd*, No. 4:06CV01510 SWW, 2008 U.S. Dist. LEXIS 7295, at *10, *10-11 n. 7, 2008 WL 176384, at *3, *3 n. 7 (E.D.Ark. Jan. 16, 2008) (dismissing section 1983 claim because state police officers committed alleged constitutional deprivations while acting within the scope of their employment as federal agents); *see Petty v. United States*, 80 Fed.Appx. 986, 989 (6th Cir.2003) (noting that cross-deputized local employees are considered federal employees for purposes of the Federal Tort Claims Act); *Ellis v. Ficano*, No. 94-1039, 1995 U.S.App. LEXIS 38840, at *20, 1995 WL 764127, at *6 (6th Cir. Dec. 27, 1995) (affirming that federal officers are subject a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for alleged constitutional deprivations). *But see Aikman v. County of Westchester*, 491 F.Supp.2d 374, 380 (S.D.N.Y.2007) (concluding that cross-deputized local employees are still subject to section 1983 liability because that provision does not fall within section 3374's exemption of claims brought under "any Federal tort liability statute"). Furthermore, at least one court has held that a cross-deputized local employee is no longer a state actor subject to suit under section 1983 and dismissed section 1983 claims against the underlying local government. *Bordeaux v. Lynch*, 958 F.Supp. 77, 84, 84 n. 5 (N.D.N.Y.1997).

*Id.* at 534-35 (footnote omitted). *See also, Lawson v. McNamara*, 438 Fed.Appx. 113, 115 (3rd Cir. 2011) (federal constitutional claims against Special United States Deputy Marshals assigned to a Violent Crimes Fugitive Task Force are considered *Bivens* claims against federal actors rather than claims brought against state actors under 42 U.S.C. § 1983).

In *Petty*, the Sixth Circuit emphasized that federally deputized local law enforcement officers are federal actors, pointing out that a city police officer assigned to a multi-jurisdictional task force was considered a federal employee for purposes of the Federal Tort Claims Act (FTCA) "[b]y virtue of his assignment to an FBI-operated task force," while other city police officers involved in the same incident who were not attached to the task force were not subject to the FTCA "because they [were] not federal employees." *Petty*, 80 Fed. Appx. 986, 987-90. Because Sharp

was a federal actor, plaintiff cannot bring an action against him under 42 U.S.C. § 1983. *See Leon*, 823 F.2d at 931; *Corner*, 99 Fed. Appx. at 580; *Snyder*, 990 F.Supp.2d at 837. Rather, plaintiff's remedy for an alleged federal constitutional violation is properly brought as an action under *Bivens*, in which "the Supreme Court recognized a right to recover damages against federal officials who violate an individual's constitutional rights." *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003).

In his response, plaintiff contends that an issue of fact exists as to whether defendant Sharp was a Special Deputy assigned to the USMS Grand Rapids Fugitive Task Force (the "Task Force") or an employee of the MDOC. Essentially, plaintiff is challenging the United States Attorney's certification that defendant Sharp was acting within the scope of his federal employment. "Although a plaintiff may challenge the Attorney General's scope of employment certification . . . he or she bears the burden of coming forward with specific facts rebutting the certification." *Larsen v. Frederiksen*, 277 F.3d 1040, 1041 (8th Cir. 2002) (internal quotation marks omitted).

Here, plaintiff attempts to rebut the certification by referring to four documents which he claims establish that defendant Sharp was not a federal employee at the time of the incident. First, plaintiff noted that defendant Sharp's declaration in support of the motion for summary judgment states, "I am an investigator employed by the Michigan Deparment of Corrections (MDOC) in Grand Rapids, Michigan." Motion to Stay (docket no. 23 at p. ID# 130); Sharp Decl. at ¶ 1. This statement does not create an issue of fact with respect to defendant Sharp's status as a Special Deputy or as a member of the Task Force. It is undisputed that defendant Sharp was employed by the MDOC while he was appointed as a Special Deputy. The form appointing Sharp

11

as a Special Deputy explicitly named Sharp's employer as the MDOC and the sponsoring agency as the "U.S. Marshals Service."  *See* Appointment and Oath (docket no. 13-4).

Second, plaintiff points out that the arrest report was completed on an MDOC form. Motion to Stay at p. ID# 130; ARU Arrest Report (docket no. 23-1 at p. ID# 153).  Plaintiff represented to the Court that "[t]here is no reference to the U.S. Marshall [sic] or any federal government agency involved" in the arrest report and that [t]his clearly represents that defendant Sharp works for the Michigan Department of Corrections." Motion to stay at p. ID# 130. Plaintiff's statement blatantly misrepresents the contents of the arrest report.  The arrest report explicitly identified the "agencies involved" as "ARU, US Marshals," that the arrest was classified as "ARU Assisted" [as opposed to "ARU only"], that "[t]he task force was set up" doing surveillance, and that when Sharp spotted plaintiff he "informed the team" which arrested plaintiff.  *See* ARU Arrest Report.   The arrest report is consistent with defendant Sharp acting as a Special Deputy assigned to the Task Force.

Third, plaintiff contends that the critical incident report filed with respect to the arrest demonstrates that defendant Sharp was an MDOC employee because the author of the report stated that he identified himself and Sharp as from the MDOC, that they were there to arrest plaintiff for a parole violation, and the other officer referred to his "MDOC issued ECD [electronic control device]."  MDOC ARU Critical Incident Report (docket no. 13-3).  Fourth, plaintiff makes a similar observation pointing out that a Michigan Parole Board Notice of Action refers to Sharp as working for the ARU.  Notice of Action (docket no. 23-1 at p. ID# 155).[2]  These documents merely establish

---

[2] The Court notes that plaintiff incorrectly refers to this document as "Defendant's Exhibit # 5".  *See* Motion to Stay (docket no. 23 at p. ID# 131).

the undisputed fact that defendant Sharp was an MDOC employee during his tenure as a Special Deputy.   It does not create any factual issue with respect to either the validity of Sharp's appointment as a Special Deputy or his assignment to the Task Force on the date of plaintiff's arrest.

Viewing the evidence in the light most favorable to the non-moving party (plaintiff), there is no factual dispute that defendant Sharp executed the warrant against plaintiff in his capacity as a Special Deputy assigned to the Task Force.   Because Sharp acted under color of federal law, rather than state law, he is not subject to liability under § 1983.   *See Mitchell*, 343 F.3d at 825; *Leon*, 823 F.2d at 931; *Corner*, 99 Fed. Appx. at 580.   Accordingly, Sharp should be granted summary judgment with respect to plaintiff's § 1983 claim.[3]

### C.   Plaintiff's claims brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA")

Plaintiff also alleged that defendant Sharp committed unspecified state law torts against him.   *See* Amend. Compl. at ¶ 46.   Tort claims against federal employees acting within the scope of their employment must be brought pursuant to the FTCA, which provides in pertinent part that:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive

---

[3] Plaintiff has asserted in his response, motion to stay, and his proposed second and third amended complaints that defendant Sharp is an MDOC employee subject to suit under § 1983 and state law. Nevertheless, plaintiff has advised the Court that if Sharp was a federal employee, then he "wishes to bring a Bivens [sic] cause of action" against Sharp and that "the Court should add a Bivens [sic] claim to this cause of action."   Motion to Stay (docket no. 23 at pp. ID## 136-37).   It is the responsibility of plaintiff, not this Court, to add a *Bivens* claim.   *See Mitchell*, 343 F.3d at 825 (rejecting the plaintiff's proposition "that a court must convert a Section 1983 claim asserted against federal officials to one asserting *Bivens* violations").   Regardless of whether Sharp's motion for summary judgment is granted or denied, plaintiff's amended complaint (docket no. 8) remains pending against defendant Mosley.   If plaintiff wants to add a *Bivens* claim against Sharp, then he needs to file an appropriate motion to amend his pleading.

of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1). *See Levin v. United States*, -- U.S. --, 133 S. Ct. 1224, 1229 (2013) ("In 1988 . . . Congress enacted comprehensive legislation titled the Federal Employees Liability Reform and Tort Compensation Act (Liability Reform Act), 102 Stat. 4563, and often called the Westfall Act. This embracive measure makes the remedy against the United States under the FTCA exclusive for torts committed by federal employees acting within the scope of their employment, 28 U.S.C. § 2679(b)(1)."). *See also*, 5 U.S.C. § 3374(c)(2) ("During the period of assignment, a State or local government employee on detail to a Federal agency . . . is deemed an employee of the agency for the purpose of . . . the [FTCA] and any other Federal tort liability statute[.]"

Because the United States Attorney certified that defendant Sharp was acting within the scope of his federal employment, plaintiff's claim against Sharp is subject to the FTCA and deemed as an action against the United States:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).

14

Based on this record, the United States should be substituted as the proper defendant for plaintiff's state tort claims against defendant Sharp. However, in this case, substitution is futile because plaintiff failed to exhaust his administrative remedies for the alleged torts which occurred during his arrest. "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). As the Court recently explained in *Sherman v. United States*, -- F. Supp. 3d --, 2014 WL 4921389 (E.D. Mich. Sept. 30, 2014):

> Under the FTCA, a plaintiff must present his claims to the appropriate federal agency and either receive a written notification that the claim has been finally denied or wait six months before filing a complaint. Federal law states:
>
>> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.
>
> 28 U.S.C. § 2675(a). The administrative claim prerequisite is a jurisdictional requirement that cannot be waived. *See Rogers v. United States*, 675 F.2d 123, 124 (6th Cir.1982); *see also Garrett v. United States*, 640 F.2d 24, 26 (6th Cir.1981) (" 'These conditions are jurisdictional requirements, not capable of waiver or subject to estoppel.' ") (citations omitted).
>
> Under Department of Justice regulations, a claim is deemed presented for purposes of 28 U.S.C. § 2675(a) when a federal agency receives "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). A claimant presents a claim under section 2675 when he or she "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Douglas v. United States*, 658

F.2d 445, 447 (6th Cir.1981) (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir.1980)).

*Sherman*, -- F. Supp. 3d --, 2014 WL 4921389 at *3.

It is undisputed that plaintiff failed to exhaust his administrative remedies under the FTCA. The amended complaint does not allege exhaustion. Mr. Gerald Auerbach, General Counsel, USMS Headquarters, reported that a search of agency records did not reveal any FTCA claim presented to the USMS by or on behalf of plaintiff, Robert Orlando Love. *See* Auerbach Decl. at ¶¶ 1-5 (docket no. 13-6). Furthermore, after receiving defendant Sharp's dispositive motion, plaintiff requested that Sharp's counsel provide him with forms and instructions so that he could exhaust a claim under the FTCA. *See* Plaintiff's Motion to compel (docket no. 15). However, in making this request, plaintiff continued to assert that defendant Sharp was *not* a federal employee:

> Plaintiff Love at no time prior to receiving this pleading [defendant Sharp's motion for summary judgment] had any knowledge of defendant Sharp's claimed status as a [sic] employee of the United States government.

> Plaintiff Love asserted and continues to assert that defendant Sharp is an employee of the Michigan Department of Corrections.

> Yet, if Defendant Sharp asserts that he is an employee of the United States government and that the United States government is the proper defendant, then plaintiff Love must attempt to begin the process to exhaust his administrative remedies for this lawsuit to properly proceed.

*Id.* at p. ID# 97. Defendant's counsel sent plaintiff a Standard Form 95, Claim for Damage, Injury or Death. *See* Defendant Sharp's Response and letter to plaintiff (docket nos. 20 and 20-1); Order (docket no. 34). There is no evidence, however, that plaintiff ever filed a claim. In summary, plaintiff is barred from bringing state tort claims against defendant Sharp because he failed to exhaust the administrative remedies under the FTCA. Accordingly, defendant Sharp's motion for summary judgment should be granted with respect to plaintiff's state tort claims.

### D.      Plaintiff's conspiracy claim

Plaintiff also alleged that defendant Sharp conspired with co-defendant Mosley to violate plaintiff's civil rights.  While plaintiff labels this conspiracy claim as brought under 42 U.S.C. § 1983, defendant Sharp points out that such a claim is properly brought under 42 U.S.C. § 1985(3), which provides in pertinent part that:

> If two or more persons in any State or Territory conspire  .   .    for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws .   .   .  in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

"To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (internal quotation marks omitted).  In addition, "[a] § 1985(3) complaint must allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action."  *Id.* (internal quotation marks omitted). Here, plaintiff's conspiracy claim fails because he did not allege any class-based discriminatory

17

animus.  Accordingly, defendant Sharp's motion for summary judgment should be granted as to the conspiracy claim.[4]

## IV.    Plaintiff's Motion to Stay

Finally, in his motion to stay (which also served as his response to the motion for summary judgment), plaintiff repeated his assertion that some documentary evidence shows that defendant Sharp was an MDOC employee and that additional discovery is required for plaintiff to respond to Sharp's motion.  *See* Plaintiff's Aff. at ¶ 5 (docket no. 23-1 at pp. ID##142-43).  Plaintiff brought the motion to stay pursuant to Fed. R. Civ. P. 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or  (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  The trial court's allowance of additional discovery under Fed. R. Civ. P. 56(d) (formerly Rule 56(f)) is discretionary.  *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 416 (6th Cir. 2009).  "The affidavit required by [former] Rule 56(f) to support a request for additional discovery must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered."  *Id.*  The Sixth Circuit has cautioned that in the typical case, when the parties have no opportunity for discovery, denying a motion under Rule 56(d) and ruling on a summary judgment motion is likely to be an abuse of discretion.  *Siggers v. Campbell*, 652 F.3d 681, 695-96 (6th Cir. 2011).  However, "[i]t is not an abuse of discretion for the district court to deny the discovery request when the party makes only general and conclusory

---

[4] Because plaintiff has not alleged any cause of action against defendant Sharp, it is unnecessary to address Sharp's qualified immunity argument.

18

statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004).

Here, plaintiff's motion to stay is without merit. While plaintiff claims that he needs to have discovery on a myriad of issues, the only factual issue relevant to defendant Sharp's motion for summary judgment is whether Sharp was a federal employee at the time of the alleged incident. Defendant Sharp has presented evidence that he was appointed as Special Deputy and was acting within the scope of his federal employment when plaintiff was arrested. While plaintiff presented evidence that Sharp was an employee of the MDOC, that employment is consistent with Sharp's appointment as a Special Deputy. Plaintiff's conclusory Rule 56(d) affidavit did not identify any additional discovery which would shed light on this issue. Accordingly, plaintiff's motion to stay (docket no. 23) should be denied.

### V.     Plaintiff's proposed amended complaints

### A.     Plaintiff's proposed second amended complaint (docket no. 27)

After responding to defendant Sharp's dispositive motion, plaintiff filed a proposed second amended complaint. Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" which "should freely give leave when justice so requires." Here, plaintiff filed a proposed second amended complaint with a incorporated a "Notice of Motion" attached to the end of the document. *See* Proposed Second Amend. Compl. (docket no. 27 at p. ID# 174). Contrary to the Court's rules, plaintiff did not include a supporting brief explaining the legal basis for his proposed amendment. *See* W.D. Mich. LCivR 7.1(a) ("[a]ll motions, except those made during a hearing or trial, shall be accompanied by

19

a supporting brief").  However, it is unnecessary to address plaintiff's improvidently filed proposed second amended complaint, because it has been rendered moot by his subsequent motion for leave to file a third amended complaint.  Accordingly, plaintiff's proposed second amended complaint (docket no. 27) should be stricken as moot.

### B.    Plaintiff's proposed third amended complaint (docket no. 40)

The proposed third amended complaint consists of five counts directed against defendant Mosley, in her individual and official capacity as a parole agent for the MDOC, and defendant Sharp, in his individual and official capacity, as an investigator for the MDOC. *See* Proposed Third Amend. Compl. at ¶¶ 5-6 (docket no. 40-1).  Count I is brought against both defendants under § 1983 alleging that they violated plaintiff's substantive due process rights and the Fourteenth Amendment's Equal Protection Clause. *Id*. at ¶¶ 31-35.  Count II is brought against both defendants pursuant to § 1983 alleging that they inflicted cruel and unusual punishment and used excessive force in violation of the Eighth Amendment. *Id.* at ¶¶ 36-40.  Count III is brought against defendant Sharp pursuant to § 1983 for excessive force in "violation of Plaintiff's Eighth and Fourteenth Amendment rights." *Id.* at ¶¶ 1-2, 41-43.  Count IV is a state tort claim against defendant Sharp for assault and battery (citing a state criminal statute, M.C.L. § 750.81). *Id.* at ¶¶ 44-46.  Finally, Count V is brought against defendant Sharp pursuant to § 1983 for deliberate indifference to plaintiff's medical needs "in violation of Plaintiff's Eighth and Fourteenth Amendment rights." *Id.* at ¶¶ 1-2, 47-49.

Plaintiff's motion should be denied as futile.  The proposed third amended complaint suffers from the same flaws as his amended complaint, because it ignores the undisputed fact that defendant Sharp was a federal employee at the time of the occurrence and seeks relief against Sharp

as a state employee under 42 U.S.C. § 1983.  Although Fed. R. Civ. P. 15(a)(2) encourages courts

to grant leave to amend when justice so requires, "courts need not give leave to amend when doing

so would be futile." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014).

Amending a pleading would be futile "if a proposed amendment would not survive a motion to

dismiss." *Id.*  Here, plaintiff's proposed third amended complaint fails to state a claim to relief that

is plausible on its face.  *Iqbal*, 556 U.S. at 678.  The Court record established that defendant Sharp

was a federal employee at the time of the alleged incident.  Plaintiff cannot avoid that fact by simply

alleging that Sharp was a state employee.  Accordingly, plaintiff's motion for leave to file a third

amended complaint (docket no. 40) should be denied.

### VI.    Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's claims

against defendants MDOC and the State of Michigan be **DISMISSED** pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).

I further recommend that plaintiff's motion to stay (docket no. 23) be **DENIED**.

I further recommend that defendant Sharp's combined motion to dismiss and for

summary judgment (docket no. 12) be **GRANTED** and that he be **DISMISSED** from this action.

I further recommend that plaintiff's second amended complaint (docket no. 27) be

**STRICKEN** as moot.

I further recommend that plaintiff's motion for leave to file a third amended

complaint (docket no. 40) be **DENIED**.

Dated:  March 30, 2015                          /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge

21

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).